**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| STRYKER CORPORATION and STRYKER SALES CORPORATION, | |
| Plaintiffs, | Civil Action No. |
| v. | **JURY TRIAL DEMANDED** |
| ZIMMER SURGICAL, INC., ZIMMER, INC., and DORNOCH MEDICAL SYSTEMS, INC., | |
| Defendants. | |

**COMPLAINT**

Plaintiffs Stryker Corporation and Stryker Sales Corporation (collectively, "the Stryker Plaintiffs" or "Plaintiffs") state the following as their complaint against Defendants Zimmer Surgical, Inc., Zimmer, Inc., and Dornoch Medical Systems, Inc. (collectively, "Defendants"):

**THE PARTIES**

1.      Stryker Corporation ("Stryker") is a Michigan corporation having its principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan 49002.

2.      Stryker Sales Corporation ("Stryker Sales") is a Michigan corporation having its principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan 49002.

3.      On information and belief, Defendant Zimmer, Inc. ("Zimmer") is a Delaware corporation having its principal place of business at 1800 West Center Street, Warsaw, Indiana 46581. On information and belief, Zimmer and its subsidiaries operate as the brand "Zimmer Biomet."

4.      On information and belief, Defendant Zimmer Surgical, Inc. ("Zimmer Surgical") is a Delaware corporation having its principal place of business at 200 West Ohio Avenue,

Dover, OH 44622. Upon information and belief, Zimmer Surgical is wholly owned directly and indirectly by Zimmer.

5.  On information and belief, Defendant Dornoch Medical Systems, Inc. ("Dornoch") is an Illinois corporation having its principal place of business at 200 NW Parkway Dr., Riverside, Missouri 64150. On information and belief, Dornoch Medical is a wholly-owned subsidiary of Zimmer Surgical and is controlled by Zimmer Surgical and/or Zimmer.

## NOTICE OF RELATED CASE

6.  In August 2016, Zimmer Surgical and Dornoch filed a Complaint for Patent Infringement in this judicial district against the Stryker Plaintiffs relating to U.S. Patent No. RE44,920 ("the RE920 Patent"), which was assigned Civil Action No. 16-679-RGA ("the Delaware Complaint" or "the Delaware 679 Action"). The Delaware 679 Action was assigned to the Honorable Judge Richard G. Andrews. In the Delaware Complaint, Zimmer Surgical and Dornoch assert that the Stryker Plaintiffs' Neptune 2 and 3 waste management systems infringe claims 15, 17-23, 25-30, 32-38, 40, and 41 of the RE920 Patent.

7.  As discussed further below, the Stryker Plaintiffs filed a motion to dismiss the Delaware 679 Action, which motion is pending as of the date of the filing of this Complaint. A true and correct copy of the Delaware Complaint with its exhibits is attached hereto as Exhibit 1. A true and correct copy of the RE920 Patent is attached as Exhibit A to the Delaware Complaint.

8.  The Delaware 679 Action is related to this civil action. Both cases concern the RE920 Patent, the Plaintiffs' and Defendants' waste management systems, including the Plaintiffs' Neptune system and Defendants' IntelliCart system, as well as the general state of the art regarding waste management systems.

**BACKGROUND**

9.    Stryker is a global leader in developing, designing, and manufacturing innovative medical technologies. Stryker's innovative product lines include the Neptune 2 and Neptune 3 waste management systems, which are medical waste collection systems with an on-board vacuum that utilize unique patented technology to assist operating room personnel in safely handling and clearing potentially hazardous medical waste.

10.    Stryker Sales distributes many of Stryker's products in the United States including the Neptune 2 and Neptune 3 waste management systems as well as disposable manifolds used with those Neptune systems.

11.    Zimmer, Zimmer Surgical, and Dornoch are medical technology companies and compete in the marketplace with the Stryker Plaintiffs. Upon information and belief, Defendants manufacture, use, import, offer for sale, sell, and/or distribute waste collection systems such as the IntelliCart System, which include mobile waste collection units and the disposable manifolds that are used with those units.

**Stryker's Neptune 2 and 3 Waste Collection Systems**

12.    Stryker's Neptune 2 and Neptune 3 Systems include a waste collection unit called a Rover that allows medical personnel to safely suction and collect potentially hazardous medical waste during surgeries and other procedures. An image of a Neptune 2 Rover waste collection unit is depicted in Figure 1. After medical waste is collected in the Rover, the Rover is taken to a docking station that allows for draining and cleaning of the Rover without the user having to directly handle the medical waste.



**FIGURE 1**

13.     Both the Neptune 2 and Neptune 3 waste management systems were based on earlier Stryker products, known as the Neptune or Neptune 1 waste management systems ("the Original Neptune Systems"). Neptune has been on the market since the late 1990s and the Original Neptune Systems also included a Rover that allowed medical personnel to safely remove potentially hazardous medical waste and fluids using vacuum as well as a docking station that allowed for draining and cleaning of the Rover. Features of the Original Neptune Systems are described in several patents assigned to Stryker including, for example, U.S. Patent No. 5,997,733, which issued in December 1999.

14.     Over the years, Stryker continued to improve upon the Original Neptune Systems and invested significant time and money investing in and growing its Neptune product line.

15.     The Neptune 2 waste management system was released in 2007. The Neptune 3 waste management system, which was released as a next generation product and includes many of the same features, is based on the Neptune 2 System. Dornoch and Zimmer Surgical have alleged in the Delaware Complaint that "[t]he Neptune 3 System operates in the same manner as the Neptune 2 System with respect to infringement of the claims of the '920 [RE920] patent."

16.     One of the significant improvements that Stryker made to the Original Neptune Systems was the invention of a novel intake manifold that interfaced with the collection unit, further improving safety and waste collection. Specifically, both the Neptune 2 and Neptune 3 Rover waste collection units are used with uniquely-designed removable and disposable intake manifolds that interface with the receiver in a novel fashion. Each manifold is inserted into a receiver in the waste collection unit and has several fittings through which medical waste may flow while the unit is in use. The receiver bore is angled from the horizontal and has alignment features, which allow the manifold to direct waste safely into a canister in the mobile unit. Figure 2 is an image of the intake manifold used with the Neptune 2 and Neptune 3 Rover waste collection unit. Figure 1 shows two manifolds inserted into receivers in a Rover waste collection unit.



**FIGURE 2**

17.      The Neptune 2 and Neptune 3 manifold and receiver has a patented configuration that allows for safe handling. The manifold includes features that allow it to align with complementary features of the receiver of the waste collection unit in a particular manner. For example, the intake manifold has alignment features including two different-sized tabs that lock into corresponding slots and grooves in a receiver of the waste collection unit. The manifold includes an outlet opening that is off center from the manifold housing. The receiver is attached to a canister at an angle. When the manifold housing is rotated in the bore of the receiver, the outlet opening is in a particular rotational position allowing for the offset opening to be located below its original position.

18.      Stryker has received many patents on its waste management systems including its manifold and waste collection unit systems.

19.      On February 28, 2017, the United States Patent and Trademark Office ("Patent Office") duly and legally issued U.S. Patent No. 9,579,428 (the "428 Patent"), which is assigned to Stryker Corporation. The 428 Patent is entitled "Surgical Waste Collection Assembly with a

Manifold Receiver and a Manifold with Complementary Features that Facilitate the Alignment of the Manifold with the Manifold Receiver."  A true and correct copy of the 428 Patent is attached hereto as Exhibit 2.

20.     The 428 Patent claims a medical/surgical waste collection assembly that includes a manifold and a waste collection unit. The Neptune 2 and 3 Rover units and manifolds are covered by the 428 patent.

### The Defendants' IntelliCart Waste Collection System

21.     At the end of 2012, Zimmer Surgical acquired Dornoch, a manufacturer of mobile waste collection systems.

22.     Each of Dornoch, Zimmer, and Zimmer Surgical makes, uses, offers to sell, sells, exports, and/or imports waste collection systems including the IntelliCart System, which includes the Duo Fluid Cart and Duo Fluid Cart with Smoke Evacuation, and manifolds that are used with the IntelliCart Fluid Carts.

23.     Defendants received FDA approval to market the IntelliCart System on or about December 21, 2016.

24.     When Dornoch originally began selling its waste collection systems, it did not market the system with intake manifolds such as those used in Stryker's Neptune 2 System but used a lid-based system. However, Dornoch redesigned its waste collection system to create a fluid waste collection unit with an intake manifold and copied the features from Stryker's products and patents. The IntelliCart System uses the intake manifold design and waste collection unit with Stryker's proprietary features.

25.     Attached as Exhibit 3 is a true and correct copy of a product brochure available on Zimmer Biomet's website as of the filing date of this Complaint. Exhibit 3 depicts the IntelliCart

System Duo Fluid Cart and Duo Fluid Cart with Smoke Evacuation, as well as manifolds used

with the carts. An image of the IntelliCart System Duo Fluid Cart with manifolds from Exhibit 3

is shown in Figure 3. An image of single use manifolds from Exhibit 3 is shown in Figure 4.



**FIGURE 3**



Single Use Manifold  00514020100

**FIGURE 4**

26.     As of the filing date of this complaint, videos describing how to use the IntelliCart

System along with the manifolds were available on Zimmer Biomet's website at

http://www.zimmerbiomet.com/medical-professionals/surgical-and-operating-room-

solutions/product/intellicart-system.html ("Zimmer Biomet IntelliCart website videos").

Defendants use the Zimmer Biomet IntelliCart website videos to instruct users including

Defendants' customers on how to use the IntelliCart System waste collection units and

manifolds. One or more of the videos instruct users on, among other things, how to insert a

manifold into the waste collection unit and depicts rotation of the manifold into the unit. One or

more of the videos highlight the alignment features in the system.

**The RE920 Patent And Zimmer Surgical's and Dornoch's Lawsuit In Delaware**

27.     Zimmer Surgical and Zimmer Inc. ("the Zimmer Defendants") have repeatedly copied Stryker products and infringed Stryker patents. On February 5, 2013, a jury in Michigan found that the Zimmer Defendants willfully infringed three Stryker patents.

28.     Days after that jury verdict, on February 21, 2013, Dornoch, the recently-acquired Zimmer subsidiary, filed a patent application seeking reissue of an existing patent, U.S. Patent No. 7,892,420 ("the Original 420 Patent"), which generally related to waste collection systems.

29.     The application for the Original 420 Patent was filed in February 2006 and the patent issued in February 2011 with fourteen claims. The Original 420 Patent was identified as a continuation-in-part of, and claimed priority to, U.S. Patent No. 7,258,711 ("the 711 Patent"), which was filed on August 3, 2004. The Original 420 Patent had no other priority claims.

30.     As a continuation-in-part, the specification of the Original 420 Patent included matter that was not in the 711 Patent including new matter relating to, for example, the collection of laboratory and industrial waste and new matter relating to buffer delivery, pH controllers, pH sensors, mixing pumps, and transfer pumps. All of the fourteen claims of the Original 420 Patent required, among other things, a pH sensor and/or pH controller, buffer delivery, mixing pumps, and transfer pumps. The Defendants never alleged that Stryker Plaintiffs infringed the Original 420 Patent.

31.     In the reissue application for the Original 420 Patent, Dornoch identified the application as a reissue of the Original 420 Patent and again identified the application as a continuation-in-part of, and claimed priority to, the 711 Patent. The reissue application had no other priority claims.

32.     In filing the reissue application, the named inventors submitted a declaration asserting that the Original 420 Patent was wholly or partly inoperative or invalid because the

patentee claimed more or less than he had the right to claim. The reissue application amended the fourteen existing claims of the Original 420 Patent by replacing the word "bowl" with the word "reservoir" or "tank." The reissue application also added 27 new claims (issued Claims 15 through 41), which includes all of the asserted claims of the RE920 Patent. None of the new claims in the reissue application (Claims 15 through 41) required a pH sensor, pH controller, buffer delivery, mixing pumps or transfer pumps. Claims 15 through 41 are not substantially identical to the claims of the original patent.

33.    The reissue application was allowed and, on June 3, 2014, U.S. Patent No. RE44,920 ("the RE920 Patent") was issued. On June 3, 2014, the Original 420 Patent was surrendered.

34.    As described above, in August 2016, Zimmer Surgical and Dornoch filed the Delaware Complaint in this judicial district, attached as Exhibit 1, which was assigned to the Honorable Richard G. Andrews. In the Delaware Complaint, Zimmer Surgical and Dornoch assert that the Stryker Plaintiffs' Neptune 2 and 3 waste management systems infringe claims 15, 17-23, 25-30, 32-38, 40, and 41 of the RE920 Patent.

35.    In the Delaware Complaint, Zimmer Surgical and Dornoch alleged that "Stryker and Stryker Sales have and continue to directly infringe one or more claims of the [RE920 Patent] by making, using (e.g., through testing), offering for sale, and/or selling at least the Neptune 2 and Neptune 3 Systems."  Zimmer Surgical and Dornoch further alleged that "Stryker and Stryker Sales have also induced and continue to induce acts by third parties that Stryker and Stryker Sales know or should know constitute direct infringement of the [RE920 Patent]." Zimmer Surgical and Dornoch further alleged that Stryker and Stryker Sales have "contributed to

and continue to contribute to the infringement of the [RE920 Patent]." Zimmer Surgical and Dornoch further alleged willful infringement and entitlement to enhanced damages.

36.     In October 2016, Stryker and Stryker Sales filed a motion to dismiss the Delaware Complaint due to, e.g., the plaintiffs' failure to state a plausible claim of indirect patent infringement, willful infringement, and direct infringement (due to impliedly alleging infringement by Neptune "consumables"). That motion is still pending; however, the Honorable Mary Pat Thygne has issued a report recommending to Judge Andrews that Zimmer Surgical's and Dornoch's pre-suit indirect infringement claims be dismissed for failure to plead pre-suit knowledge of the RE920 Patent. To date, Zimmer Surgical and Dornoch have not withdrawn the Delaware Complaint or otherwise amended their allegations of infringement. Due to the pending motion to dismiss, the Stryker Plaintiffs have not filed an answer or counterclaims in the Delaware 679 Action.

37.     On August 4, 2017, Plaintiffs in the Delaware 679 Action served Plaintiffs' Preliminary Infringement Contentions asserting infringement by the Neptune 2 and Neptune 3 Systems of claims 15, 17-24, 27-30, and 32-39 ("the Asserted Claims of the RE920 Patent"). In its Preliminary Infringement Contentions, Plaintiffs in the Delaware 679 Action failed to provide factual support for their contentions that either Neptune 2 or Neptune 3 systems include all the elements of the Asserted Claims of the RE920 Patent and did not provide any factual evidence that any "consumable" infringes any Asserted Claim of the RE920 Patent.

## JURISDICTION AND VENUE

38.     This is an action for a declaratory judgment of noninfringement, patent invalidity, and unenforceability of the RE920 Patent as well as intervening rights under the RE920 Patent, arising under the Patent Laws of the United States, Title 35 of the U.S. Code. This is also an

action for patent infringement of the 428 Patent that arises under the patent laws of the United States including Title 35 U.S.C. § 1 *et seq.* and seeks damages and injunctive relief as provided in 35 U.S.C. §§281 and 283-285.

39.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

40.    This Court has personal jurisdiction, general and specific, over Defendants because Defendants have sufficient minimum contacts to establish personal jurisdiction in this district. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), 1391(c) and/or 1400(b). Defendants Zimmer Inc. and Zimmer Surgical are Delaware corporations that reside in this district and, upon information and belief, Zimmer Surgical or Zimmer control the subsidiary Dornoch. Defendants have a regular and established place of business in this judicial district and have done and are doing substantial business in this judicial district, both generally and, on information and belief, with respect to the allegations in this Complaint, including Defendants' one or more acts of infringement in this judicial district. Defendants have purposely availed themselves of the privilege of conducting activities in this judicial district and invoked the benefits and protection of this judicial district by having substantial contacts and regularly and purposefully conducting business in this judicial district, both generally and, upon information and belief, with respect to the allegations in this Complaint. By its Delaware Complaint, Zimmer Surgical and Dornoch have consented to personal jurisdiction and venue in this judicial district as it relates to the claims in this Complaint.

## COUNT I
## DECLARATION OF NONINFRINGEMENT, INVALIDITY, AND
## UNENFORCEABILITY OF U.S. PATENT NO. RE44,920
## (As To Dornoch and Zimmer Surgical)

41.     The Stryker Plaintiffs reallege and incorporate by reference each of the allegations set forth above in paragraphs 1-40 as well as the allegations in Counts II and III below, as if fully set forth herein.

42.     Dornoch, by its Delaware Complaint, alleges that U.S. Patent No. RE44,920 issued to it as the assignee of James L. Dunn and Lawrence E. Guerra.

43.     Zimmer Surgical, by its Delaware Complaint, alleges that it is Dornoch's exclusive licensee of the RE920 Patent for the manufacture, use, sale, offer for sale, and import of all consumables and accessories covered by the RE920 Patent. As set forth in the Stryker Plaintiffs' Motion To Dismiss and related filings, based on the allegations in the Delaware Complaint, it appears that Zimmer Surgical does not have adequate interest in the RE920 Patent, is improperly named as a Plaintiff in the Delaware Complaint, and lacks standing to sue; nonetheless, Zimmer Surgical alleges that it is properly named as a plaintiff in the Delaware Complaint and has made allegations of infringement.

44.     Dornoch and Zimmer Surgical allege that the Stryker Plaintiffs have directly and indirectly infringed, and are directly and indirectly infringing, the Asserted Claims of the RE920 Patent by making, using, offering for sale, and/or selling the Neptune 2 and Neptune 3 Systems.

45.     The Stryker Plaintiffs have not infringed and are not infringing, directly or indirectly, either literally or under the doctrine of equivalents, the RE920 Patent and at least the asserted claims of the RE920 Patent are invalid and unenforceable. There is thus a real, immediate, substantial, and justiciable controversy between the Stryker Plaintiffs and Dornoch

and Zimmer Surgical concerning whether the RE920 Patent is valid, infringed, and unenforceable that is amenable to specific relief through the conclusive decrees requested.

46.     Plaintiffs have not engaged and are not engaging in any act that constitutes direct infringement, induced infringement, or contributory infringement, either literally or under the doctrine of equivalents, of any valid and enforceable claim of the RE920 Patent. No product made, used, sold, offered for sale, or imported by the Stryker Plaintiffs infringes, either literally or under the doctrine of equivalents, any valid and enforceable claim of the RE920 Patent under any section of 35 U.S.C. § 271.

47.     The Neptune 2 and Neptune 3 Systems do not directly infringe any claim of the RE920 Patent either literally or under the doctrine of equivalents. The Neptune 2 and Neptune 3 Systems do not include several elements of the claims of the RE920 Patent including at least the claimed movable waste fluid collection cart that includes at least two containers, "each container including a suction port, each container being configured to collect liquid waste from the patient via its respective suction port when a vacuum is applied to the container, at least one of the suction ports being configured to provide at least two different levels of suction, an outlet from each container being operatively connectable to the drain portion and an inlet to each container being operatively connectable to the flushing portion" or "each container including a suction port, each container being configured to collect liquid waste from the patient via its respective suction port when a vacuum is applied to the container, a level of suction at one of the suction ports being independently adjustable of a level of suction at another of the suction ports, outlets from the at least two containers being operatively connectable to the drain portion and an inlet to each container being operatively connectable to the flushing portion." This is at least because the containers do not include a suction port, the containers are not configured to collect liquid waste

via a suction port, the suction ports are not configured to provide varying or adjustable levels of suction, and there are not outlets from each container that are operatively connectable to a drain portion when the claims are properly construed. The Neptune 2 and Neptune 3 Systems also do not include the claimed waste fluid disposal unit as described in the specification of the RE920 Patent.

48.     To the extent that Zimmer Surgical and Dornoch have alleged infringement of the RE920 Patent by "consumables such as manifolds, filters, smoke tubing, detergent, and quick trap specimen collectors" used with the Neptune 2 and Neptune 3 Systems, no consumables include any element of any claim of the RE920 Patent and cannot infringe either literally or under the doctrine of equivalents. Each of manifolds, filters, smoke tubing, detergent, and quick trap specimen collectors is not a material part of the alleged invention claimed in the RE920 Patent. Smoke tubing, detergent, and quick trap specimen collectors used with the Neptune 2 and Neptune 3 Systems are staple articles of commerce and are suitable for substantial uses beyond the Neptune 2 and Neptune 3 Systems.

49.     The Stryker Plaintiffs have not induced, and are not inducing, the infringement of any valid and enforceable claim of the RE920 Patent.

50.     The Stryker Plaintiffs have not contributorily infringed, and are not contributorily infringing, any valid and enforceable claim of the RE920 Patent.

51.     The Stryker Plaintiffs do not have the requisite specific intent to infringe or knowledge of infringement of the RE920 Patent required for inducement of infringement or contributory infringement. The Stryker Plaintiffs do not offer to sell or sell within the United States or import into the United States any component knowing that it is especially made or especially adapted for use in infringement of the RE920 Patent.

52.    The RE920 Patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112 *et seq.* and/or non-statutory obviousness-type double patenting. No claim of the RE920 Patent can be validly construed to cover any product or action of the Stryker Plaintiffs.

53.    In February 2015, well after the RE920 Patent was issued, the applicant filed a petition with the Patent Office to accept a delayed priority claim, alleging that the RE920 Patent was actually entitled to claim priority to U.S. Patent No. 6,893,425 ("the 425 Patent"), which was filed on March 4, 2002. On April 28, 2015, a certificate of correction was issued purporting to amend the cover page of the RE920 Patent to reference the 425 Patent. However, the applicant never attempted to amend the priority date of the Original 420 Patent, which is now surrendered, and the chain of priority was broken.

54.    At least the asserted claims of the RE920 Patent are invalid under 35 U.S.C. §§ 102 and 103 in view of the prior art. For example, the asserted claims of the RE920 Patent are entitled to a priority date of no earlier than February 13, 2006. The asserted claims are anticipated by and/or obvious in view of at least WO 03075821, EP 1 480 594, U.S. Patent Publication No. 2005/0004537, and U.S. Publication No. 2003/0164600, which disclose every element of the asserted claims. The asserted claims are also invalid for obviousness-type double patenting at least in view of U.S. Patent No. 7,090,663 as the asserted claims of the RE920 Patent are obvious in view of claims of that patent.

55.    As another example, the asserted claims are anticipated by and/or obvious in view of at least U.S. Patent Nos. 5,242,434, 5,997,733, 4,863,446, 4,957,491, and 5,914,047, which disclose every element, either alone or in combination, of the asserted claims. A person of

ordinary skill in the art would have been readily motivated to combine these patents and the knowledge of the skilled artisan would have otherwise rendered the claims invalid.

56.    The asserted claims are also anticipated by and/or rendered obvious in view of prior art products including the Original Neptune Systems and the SafeCycle product, which were on sale before the priority date and which embody the elements of the asserted claims and/or obvious variations thereof that render the asserted claims of the RE920 Patent obvious.

57.    At least the asserted claims of the RE920 Patent are also invalid for being indefinite, lacking written description support, and/or lacking enablement under 35 U.S.C. § 112. For example, the asserted claims of the RE920 Patent, which were newly added at the time of the reissue application, do not claim the invention disclosed in the written description and fail to include necessary elements as required under Section 112. To the extent that Defendants allege the asserted claims cover the Neptune systems, the asserted claims of the RE920 Patent are invalid under Section 112 for failing to enable the full scope of the claims including for failure to teach the ordinarily skilled artisan how to practice the alleged invention using a vacuum source internal to the cart.

58.    At least the asserted claims of the RE920 Patent are invalid and/or improperly granted under 35 U.S.C. §§ 251 and 252 including for failure to comply with the conditions of reissue specified therein. For example, in obtaining the RE920 Patent, the applicant violated the recapture rule and failed to comply with the "original patent" requirement by, for example, claiming an "invention" that was not described in the original patent, improperly recapturing subject matter that had voluntarily been surrendered and thereby dedicated to the public domain, and attempting to obtain broader claims after previously making narrowing amendments during the prosecution of related patents. As another example, the Asserted Claims of the RE920 Patent

are invalid or unenforceable against the Stryker Plaintiffs because there was no error in the original prosecution of the 420 Patent within the meaning of 35 U.S.C. § 251 justifying the new claims that were filed during reissue.

59.    The RE920 Patent is unenforceable under principles of equity including waiver, estoppel, acquiescence, prosecution laches, and/or unclean hands. As an example, Stryker has been making and selling the Neptune line of products long before the RE920 Patent issued. Dornoch and Zimmer Surgical did not assert infringement by any Stryker Plaintiffs for years and did not attempt to change the claims of the Original 420 Patent or any other patent via reissue to claim an "invention" that they now claim is inventive until after Zimmer Surgical and Zimmer Inc. were found to have willfully infringed Stryker patents in another litigation. Instead, Dornoch and Zimmer Surgical unreasonably and inexplicably delayed filing a reissue application for the Asserted Claims of the RE920 Patent until 2013, which was eleven years after Dornoch and Zimmer Surgical now assert that the invention was purportedly disclosed in the 425 Patent and after prosecution of the patent family had closed. Dornoch and Zimmer Surgical misleadingly allowed the Stryker Plaintiffs to continue to grow the market for their Neptune line of products, and improve and expand their product line investing in research and development, for years without any allegations of infringement. In continuing to invest and expand their product line, the Stryker Plaintiffs relied on the fact that no third party patents covered the Neptune line of products and the Stryker Plaintiffs had not been sued for infringement by Defendants. The Stryker Plaintiffs have suffered prejudice as a result of Zimmer Surgical's and Dornoch's actions and inactions. The Stryker Plaintiffs would be materially prejudiced if Zimmer Surgical and Dornoch were permitted to proceed with their charge of infringement. As another example, and

as explained further below, Dornoch and Zimmer Surgical's claims relating to the RE920 Patent are barred or otherwise limited by the doctrines of absolute and equitable intervening rights.

60.    An actual, justiciable controversy exists between the Stryker Plaintiffs and Dornoch and Zimmer Surgical as to the invalidity, unenforceability, and noninfringement of the RE920 Patent.

61.    Dornoch and Zimmer Surgical continue to assert the RE920 Patent against the Stryker Plaintiffs despite knowing that the RE920 Patent is invalid, not infringed, and unenforceable.

62.    The baseless allegations of patent infringement made by Dornoch and Zimmer Surgical against the Stryker Plaintiffs are causing irreparable damage to the Stryker Plaintiffs.

63.    The Stryker Plaintiffs are entitled to judgment by this Court declaring the claims of the RE920 Patent invalid, unenforceable, and/or not infringed by the Stryker Plaintiffs.

64.    Because the conduct of Dornoch and Zimmer Surgical render this case to be "exceptional" under 35 U.S.C. § 285, the Stryker Plaintiffs are entitled to recover their reasonable costs, expenses, and attorneys' fees.

## COUNT II
## DECLARATION OF INTERVENING RIGHTS FOR U.S. PATENT NO. RE44,920
### (As To Dornoch and Zimmer Surgical)

65.    The Stryker Plaintiffs reallege and incorporate by reference each of the allegations set forth above in paragraphs 1-64 as well as the allegations in Count III below, as if fully set forth herein.

66.    Claims 15 through 41 of the RE920 Patent are not substantially identical to any claims of the Original 420 Patent within the meaning of 35 U.S.C. § 252.

67.     The Stryker Plaintiffs made substantial preparation for and invested substantial time, efforts and money into the research, development, and marketing of the Stryker Plaintiffs' products prior to the grant of the RE920 Patent and the surrender of the Original 420 Patent. Indeed, the Stryker Plaintiffs had made, sold, offered for sale, or used the Neptune line of products (including the features that Dornoch and Zimmer Surgical allege are infringing) years before the RE920 Patent was issued and long before Zimmer Surgical ever acquired Dornoch.

68.     The Stryker Plaintiffs have absolute and equitable intervening rights pursuant to at least 35 U.S.C. § 252 as to at least Claims 15 through 41 of the RE920 Patent.

69.     The Stryker Plaintiffs are entitled to judgment by this Court declaring that the Stryker Plaintiffs have absolute and equitable intervening rights at least as to Claims 15 through 41 of the RE920 Patent and a declaration of entitlement to the continued manufacture, use, offer for sale, sale, or importation of any system allegedly patented by Claims 15 through 41 of the RE920 patent which was practiced, or for which substantial preparation of practice was made, before the grant of the RE920 patent including a declaration that the Stryker Plaintiffs may continue making, using, selling, offering for sale, or importing the Neptune 2 and Neptune 3 line of products without regard to the RE920 Patent.

70.     Zimmer Surgical and Dornoch are aware that the Stryker Plaintiffs have been manufacturing, offering for sale, and selling the Neptune line of products, including the features now alleged to infringe the Asserted Claims of the RE920 Patent, since long before the RE920 patent issued and that the Stryker Plaintiffs are entitled to absolute and equitable intervening rights under 35 U.S.C. § 252 and applicable law. Despite that knowledge, Zimmer Surgical and Dornoch continue to assert claims of infringement against the Stryker Plaintiffs. The ongoing allegations against the Stryker Plaintiffs are causing irreparable damage to the Stryker Plaintiffs.

71.     Because the conduct of Dornoch and Zimmer Surgical render this case to be "exceptional" under 35 U.S.C. § 285, the Stryker Plaintiffs are entitled to recover their reasonable costs, expenses, and attorneys' fees.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 9,579,428
## (As To All Defendants)

72.     The Stryker Plaintiffs incorporate paragraphs 1 through 71 as if fully set forth herein.

73.     Stryker owns all right, title, and interest in and to the 428 Patent. Stryker Sales holds an exclusive license to distribute and sell the Neptune 2 and Neptune 3 waste management systems as well as manifolds covered by the 428 Patent in the United States.

74.     Upon information and belief, Defendants regularly monitor the issuance of Stryker patents including patents relating to waste collection systems. The 428 Patent is related to U.S. Patent No. 7,615,037 ("the 037 Patent"), through a number of divisional applications, which also issued to Stryker Corporation. The 037 Patent shares the same patent specification as the 428 Patent and describes the invention patented in the 428 Patent. Upon information and belief, Defendants were aware of the 037 Patent including the content of that patent at least as early as March 2015.

75.     Shortly after the 428 Patent issued in February 2017, Stryker began marking the Neptune 2 and 3 waste management systems with the 428 Patent in compliance with 35 U.S.C. § 287. Upon information and belief, Defendants became aware of the 428 Patent shortly after its issuance. Defendants have had knowledge of the 428 Patent at least as early as of the filing date of this Complaint.

76.     Defendants have directly infringed and continue to directly infringe at least claims 1, 14, and 23 of the 428 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale in the United States, and/or importing into the United States, waste collection systems including a waste collection unit and manifold, including at least the IntelliCart System fluid cart and manifolds used with the IntelliCart System fluid cart ("the Accused Zimmer Waste Collection Systems"), in violation of 35 U.S.C. § 271.

77.     The Accused Zimmer Waste Collection Systems include every single element of at least claims 1, 14 , and 23  of the 428 Patent, literally or under the doctrine of equivalents.

78.     Multiple views of the manifold of the Accused Zimmer Waste Collection Systems are shown in Figure 4. The manifold of the Accused Zimmer Waste Collection Systems includes a housing with proximal and distal ends, a longitudinal axis that extends between the proximal and distal ends and an outlet opening at the proximal end. The distal end of the housing is shown in the top left hand image of Figure 4 and the proximal end is shown in the top right hand image of Figure 4. The outlet opening is off center from the longitudinal axis of the manifold housing.

79.     As shown in Figure 4, the manifold of the Accused Zimmer Waste Collection System includes multiple inlet fittings that extend from the distal end of the manifold housing. Each fitting is shaped to receive a suction line and is in fluid communication with the outlet opening of the manifold housing.

80.     The waste collection unit of the Accused Zimmer Waste Collection System includes a canister for holding medical/surgical waste. It further includes a suction pump that is in fluid communication with the canister. The suction pump is connected to the canister by a conduit and draws suction on the canister.

81.    The waste collection unit of the Accused Zimmer Waste Collection System includes a receiver adjacent to the canister. As shown in Figure 3, the canister includes a cap, and the receiver is mounted to the cap. The receiver is shaped to have a bore dimensioned to receive the manifold housing. The bore has an open distal end into which the manifold housing is inserted and a proximal end in fluid communication with the canister. There is a valve in the receiver that opens and closes a fluid communication path from the bore into the canister. An axis extends through the bore and through the proximal and distal ends. As shown for example in Figure 3, the receiver is attached to the canister so that the axis through the receiver bore is angled from the horizontal.

82.    The waste collection unit of the Accused Zimmer Waste Collection System includes a mobile cart with the canister and receiver mounted to the cart. A second canister is also mounted to the cart. A second receiver is mounted to the cart and is in fluid communication with the second canister. The second receiver has a bore dimensioned to receive a second manifold. The suction pump is mounted to the cart and is connected to both the first and second canisters for drawing a suction on them.

83.    Figures 5A and 5B are still images from one of the Zimmer Biomet IntelliCart website videos and depict a manifold being inserted into a receiver in the waste collection unit of the Accused Zimmer Waste Collection System. Defendants instruct third parties such as customers via the video how to insert and then rotate a manifold into a receiver in the waste collection unit.

84.    The manifold housing and receiver of the Accused Zimmer Waste Collection System are collectively configured so that the manifold housing is able to rotate in the bore of the receiver. The manifold and receiver are formed with complementary alignment features that

engage when the manifold is inserted into the bore of the receiver so as to cause the outlet opening of the manifold housing to be, upon insertion into the bore, in a specific rotational alignment in the bore.



**FIGURE 5A**                    **FIGURE 5B**

85.     The alignment features of the manifold and receiver are arranged so that, when the manifold is initially inserted into the bore of the receiver, the outlet opening of the manifold housing is in a first rotational position about the axis through the receiver bore (as shown for example in Figure 5A) and, when the manifold housing is rotated in the bore, the outlet opening is in a second rotational position about the axis through the receiver bore (as shown for example in Figure 5B) so that the outlet opening is located below the position of the outlet opening when the outlet opening is in the first position.

86.     The alignment features of the manifold and receiver of the Accused Zimmer Waste Collection System include (a) the manifold having two arcuately spaced apart tabs of different arcuate lengths that extend outwardly from the manifold housing and (b) the receiver

having two slots with different arcuate lengths dimensioned to receive one of the tabs. The slots extend outwardly from the bore of the receiver. The receiver also has two grooves. Each groove extends arcuately away from a proximal end of each slot and is dimensioned to receive a separate one of the tabs and allow the tab seated in the associated slot to rotate in the groove.

87.     Figures 6 and 7 are still images from one of Zimmer Biomet IntelliCart website videos. One or more of the videos instruct users how to use the alignment features of the manifold and receiver and highlight the alignment features of the system. Figure 6 depicts a manifold used with the IntelliCart System. Figure 6 depicts one of the tabs of the manifold circled in gray. Figure 7 depicts the receiver in the IntelliCart Duo Fluid Cart and shows two slots (one of which is circled in gray). The groove at the proximal end of one of the slots is also visible in Figure 7.

**FIGURE 6**



**FIGURE 7**



88.     Defendants have also infringed indirectly and continue to infringe indirectly the 428 patent by active inducement under 35 U.S.C. § 271(b) and by contributory infringement under 35 U.S.C. § 271(c).

89.     Defendants have directed third parties, including customers, in the United States to use the Accused Zimmer Waste Collection Systems, which directly infringe the 428 Patent and which Defendants know infringe the 428 Patent. Defendants provide instructions to third parties including customers on how to use the manifolds in conjunction with the fluid carts in a manner that Defendants know create the infringing assembly. For example, product brochures and videos describe how to use the infringing IntelliCart waste collection unit together with the manifolds and highlight infringing features to customers. Moreover, Defendants encourage third parties such as customers to dispose of used manifolds and purchase additional manifolds to combine with waste collection units such as the IntelliCart to create the infringing waste

collection assembly and also encourage infringing use of the infringing system through the sale of other components.

90.     At least as early as Defendants' receipt of this Complaint, Defendants knew or were willfully blind to how the IntelliCart System fluid carts and manifolds infringe the 428 Patent. At least as early as Defendants' receipt of this Complaint, Defendants have been and are actively inducing infringement of the 428 Patent by actively and knowingly inducing third parties such as customers to commit acts that the Defendants know constitute infringement of the 428 Patent.

91.     As a result, upon information and belief, Defendants have actively and knowingly intended to aid, abet, direct, encourage, or otherwise instruct such third parties by Defendants' sale of the Accused Zimmer Waste Collection Systems including the fluid carts and manifolds to such third parties and through Defendants' promotional materials, instructions for use, and technical specifications that instruct such third parties to use the infringing systems. By continuing to provide instruction to users on how to use the Accused Zimmer Waste Collection Systems, including the IntelliCart System with manifolds, in the manner described in the claims of the 428 Patent, Defendants have and continue to specifically intend to induce infringement of the 428 Patent.

92.     Defendants have and continue to intentionally commit contributory infringement by offering to sell and/or selling within the United States components of waste collection systems that are covered by the 428 Patent, including the IntelliCart System fluid cart and manifolds, which are material parts of the invention. At least as early as Defendants' receipt of this Complaint, Defendants knew the fluid carts and manifolds were especially adapted for use in infringing the 428 Patent. The fluid carts and manifolds, which are designed to be used with each

other and infringe when used as designed, are not staple articles of commerce suitable for substantial noninfringing uses. By continuing to provide fluid carts and manifolds of the Accused Zimmer Waste Collection Systems, Defendants have and continue to specifically intend to contributorily infringe the 428 Patent.

93.     The requirements of 35 U.S.C. § 287(a) have been met with respect to the 428 Patent.

94.     As a direct and proximate result of Defendants' infringement, the Stryker Plaintiffs have been damaged and continue to be damaged. The injury to the Stryker Plaintiffs is irreparable and will continue unless and until Defendants are enjoined from further infringement.

95.     Defendants have engaged and continue to engage in willful and deliberate infringement of the 428 Patent. Without authorization, Dornoch copied the features of Stryker's manifold and receiver as well as the relevant features of the waste collection unit. Moreover, upon information and belief Defendants knew about the 428 Patent and their infringement of it at least upon or shortly after the 428 Patent's issuance, at least because Stryker began marking its Neptune 2 and Neptune 3 Systems with the 428 Patent number shortly after the patent's issuance and Defendants were at least aware of their infringement as of the filing date of this Complaint. Despite their knowledge, Defendants continue to make, use, sell, offer for sale or import into the United States the Accused Zimmer Waste Collection Systems and have not contacted Stryker to request a license or other authorization to use the 428 Patent.

96.     Defendants' egregious and willful conduct justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284, and further qualifies this action as an exceptional case supporting an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

97.    Unless a permanent injunction is issued enjoining Defendants and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the 428 Patent, the Stryker Plaintiffs will be greatly and irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, the Stryker Plaintiffs respectfully pray for the following relief:

A.    A declaration that the Stryker Plaintiffs do not infringe and have not infringed any claim of the RE920 Patent;

B.    A declaration that the RE920 Patent is invalid;

C.    A declaration that the RE920 Patent is unenforceable;

D.    Dismissal of Zimmer Surgical's and Dornoch's Delaware Complaint with prejudice, in its entirety;

E.    An injunction against Defendants from asserting that the Stryker Plaintiffs, or their officers, agents, representatives, and/or customers, have infringed or are infringing any claim of the RE920 Patent;

F.    A declaration that Stryker has equitable and statutory intervening rights under 35 U.S.C. § 252 and may continue to make, use, sell, offer for sale, and import the Neptune line of products without regard to the RE920 Patent;

G.    That U.S. Patent No. 9,579,428 be judged valid, enforceable, and infringed by Defendants, and that Defendants' infringement be judged to be willful;

H.    That the Court permanently enjoin Defendants and its subsidiaries, parents, divisions, directors, officers, agents, servants, employees and all other persons in active concert or privity or in participation with them, from making, using, selling, offering for sale, importing,

or distributing any infringing waste collection systems and from infringing, inducing infringement, and contributing to the infringement of U.S. Patent No. 9,579,428, and enjoining Defendants from assisting, inducing, or aiding or abetting any other person or entity in engaging in infringing U.S. Patent No. 9,579,428;

I.      That the Court enter an order requiring Defendants to file with the Court and serve on Plaintiffs, within thirty (30) days after service of the Court's order as herein prayed, a report (or other form of proof) in writing under oath setting forth in detail the manner and form in which Defendants have complied with the Court's injunction;

J.      That the Court enter judgment for Plaintiffs and against Defendants and award Plaintiffs all damages, together with interest and costs, for Defendants' infringement of U.S. Patent No. 9,579,428, and treble damages pursuant to 35 U.S.C. § 284;

K.      That the Court enter judgment and an order requiring Defendants to provide accountings and to pay supplemental damages to Plaintiffs including without limitation prejudgment and postjudgment interest;

L.      A judgment that this case is exceptional and an award to the Stryker Plaintiffs of their costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes and rules in common law that would be appropriate; and

M.      That Plaintiffs be awarded such other and further relief as this Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and D. Del. LR 38.1, Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 11, 2017

YOUNG   CONAWAY   STARGATT   &
TAYLOR, LLP

*Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

Of Counsel:

Robert A. Surrette
Sandra A. Frantzen
Ryan J. Pianetto
Katherine E. Ramlose
McAndrews, Held & Malloy, Ltd
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
rpianetto@mcandrews-ip.com
kramlose@mcandrews-ip.com

*Attorneys for Plaintiffs Stryker*
*Corporation and Stryker Sales*
*Corporation*

01:22246500.1